**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 11-0148-WS** |
| | ) | |
| **RONALD WAYNE MADDOX,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on the defendant's motion to dismiss Count One. (Doc. 10). The government has submitted a response and the defendant a reply, (Docs. 14, 15), and the motion is ripe for resolution.

Count One of the indictment charges that, between April 2003 and January 2011, the defendant received, concealed and retained with intent to convert to his own use and gain certain federal worker's compensation funds by falsifying travel forms in order to receive $78,246.17 in reimbursements, knowing the money to have been embezzled, stolen, purloined and converted, all in violation of 18 U.S.C. § 641. (Doc. 1 at 1).

The defendant asserts that the count is duplicitous in that each alleged falsification of a travel reimbursement form was a completed crime upon his receipt of payment thereunder. In addition to being duplicitous, the defendant maintains that those discrete crimes completed more than five years before the indictment was returned in May 2011 are barred by the five-year statute of limitations.

A continuing offense effectively extends the statute of limitations, in tension with the purposes of such statutes, a liberal judicial interpretation of such statutes in favor of repose, and congressional intent that such periods not be extended except as otherwise expressly provided by law. *Toussie v. United States*, 397 U.S. 112, 115 (1970). "These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached

[1]

unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id*. The parties agree that *Toussie* supplies the standard governing the defendant's motion. (Doc. 10 at 2; Doc. 14 at 1).

The government concedes that the explicit language of Section 641 does not compel the conclusion that it is a continuing offense. (Doc. 14 at 1). The question becomes whether "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."

The defendant is charged under the second paragraph of Section 641, which addresses receipt, concealment and retention of any embezzled, stolen, purloined or converted record, voucher, money, or thing of value of the United States. The only appellate case known to have addressed the issue has concluded that concealment or retention under Section 641 constitutes a continuing offense under *Toussie*'s second prong. *United States v. Blizzard*, 27 F.3d 100, 103 (4th Cir. 1994) ("[W]e conclude that the nature of the offense of 'concealing and retaining' stolen property in violation of 18 U.S.C. § 641 is such that Congress must assuredly have intended for it to be a continuing one."). It so ruled because "[t]he gravamen of the offense of concealing and retaining stolen governmental property is simply the possession of that property," and "[p]ossession is by nature a continuing offense." *Id*. at 102, 103 (internal quotes omitted); *accord United States v. Fleetwood*, 489 F. Supp. 129, 130, 132 (D. Ore. 1980) ("[T]he nature of a crime such as concealing and retaining stolen property [in violation of Section 641], where possession is the essence of the offense, is such that Congress must have intended it be treated as a continuing offense.").

Other appellate courts, not addressing Section 641, have likewise concluded that possessory offenses are continuing offenses. *United States v. Krstic*, 558 F.3d 1010, 1017 (9th Cir. 2009) ("Unlike false statement crimes, possessory offenses have long been described as 'continuing offenses' that are not complete until the possessor parts with the item[, such that] the statute of limitations does not begin to run until the possessor parts

with the item."); *United States v. Berndt*, 530 F.3d 553, 554 (7th Cir. 2008) ("[P]ossession is a continuing offense."). Most importantly, the Eleventh Circuit, in the related ex post facto context, has done so. *United States v. D'Angelo*, 819 F.2d 1062, 1066 (11th Cir. 1987) ("Possession is a continuing offense …."). 

The government quoted *Blizzard* in its brief, (Doc. 14 at 2-3), and the defendant offered no rebuttal. For the reasons set forth above, the Court concludes that a charge based on the concealment and retention of funds under the second paragraph of Section 641 is a continuing offense for purposes of *Toussie*. Because the defendant is charged with concealment and retention under the second paragraph of Section 641, his motion to dismiss must be denied.

The defendant is also charged with receipt of stolen government funds under the second paragraph of Section 641. Such a crime is not so easily characterized as a continuing offense. *See, e.g., United States v. Eppolito*, 543 F.3d 25, 46 (2nd Cir. 2008) ("[R]eceipt of stolen goods is a noncontinuing crime …."); *see also United States v. Serra*, 882 F.2d 471, 473 (11th Cir. 1989) (two counterfeiting transactions two days apart were two separate and distinct crimes, because the nature of the crime involved is not such that Congress assuredly intended that it be treated as a continuing one); *cf. United States v. Jaynes*, 75 F.3d 1493, 1497, 1506-07 (10th Cir. 1996) (expressing doubt that the defendants' 64 forgeries of their decedent's Social Security checks constituted a continuing offense).

The government, however, relying on a Fourth Circuit case, argues that whether receipt is a continuing offense under *Toussie* depends on the particular circumstances of the case. (Doc. 14 at 2-3). In *United States v. Smith*, 373 F.3d 561 (4th Cir. 2004), the defendant's mother received monthly Social Security checks, which were electronically deposited into the joint checking account she shared with the defendant. When she died, the defendant did not report her death, the Social Security checks therefore continued to be electronically deposited in the account, and the defendant expended those funds. This

continued from March 1994 through February 1998, but the indictment was not returned until January 2003. *Id*. at 563.

The defendant was charged under the first paragraph of Section 641, and the Court focused on embezzlement. Addressing *Toussie*, the *Smith* Court concluded that, "[a]t least in those cases where the defendant created a recurring, automatic scheme of embezzlement under section 641 by conversion of funds voluntarily placed in the defendant's possession by the government, and maintained that scheme without need for affirmative acts linked to any affirmative receipt of funds … we think that Congress must have intended that such be considered a continuing offense for purposes of the statute of limitations." 373 F.3d at 567-68. The Court acknowledged that "it may well be that different embezzlement conduct must be differently characterized in this regard." *Id*. at 568.

The dissent in *Smith* objected that *Toussie* dictates one uniform answer whether a particular statutory crime is continuing or not, based on the nature of the crime as described by Congress, and does not permit differing answers depending on the precise factual circumstances of a particular defendant's commission of the crime. 373 F.3d at 569 (Michael, J., dissenting). It is not alone in this view. *See United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991) ("As [*Toussie*] makes clear, the analysis turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue."); *accord United States v. Yashar*, 166 F.3d 873, 877 (7th Cir. 1999) (the second prong of *Toussie* focuses on "Congress' wording and intent" and whether "the statute itself delineated conduct that was continuous in nature").

Even were *Smith* deemed to provide the appropriate test under *Toussie*, it is unclear how Count One satisfies it as to "receipt." Unlike the *Smith* defendant, the defendant here is not alleged to have "maintained [a] scheme without need for affirmative acts linked to any affirmative receipt of funds," and he did not "establish a mechanism for the automatic and continuous receipt of funds for an indefinite period." 373 F.3d at 564. He did not, as in *Smith*, engage in an original, single act (or omission) and then passively

receive periodic payments of government funds not belonging to him; on the contrary, he is alleged to have engaged in repeated affirmative acts over time, with one or more affirmative acts necessary to procure each single payment.[1]

The government also cites *United States v. Billingslea*, 603 F.2d 515 (5th Cir. 1979), as having created a forgiving test for when a continuing offense under Section 641 occurs. (Doc. 14 at 2). *Billingslea*, however, did not concern the "continuing offense" issue addressed in *Toussie*. Indeed, *Billingslea* does not even mention *Toussie*, and it can scarcely be construed as interpreting a case it did not acknowledge. *Billingslea* involved the separate issue of when takings of less than a threshold statutory dollar amount can "be aggregated to make up one felonious taking." *Id*. at 518. The *Smith* panel expressly recognized that these are separate inquiries, stating that, before reaching the *Toussie* – continuing-offense issue, "we must first decide whether Smith's charged conduct was properly aggregated into a single count" under the *Billingslea* test. 373 F.3d at 563-64.

Nor is it clear that the *Billingslea* test would be satisfied even if it applies. "[T]he focus of the inquiry should be at or near the starting point of the illegal activity," and "[o]f critical importance is the state of mind or intent of the actor prior to and simultaneously with the first taking." 603 F.2d at 520. Of "equal importance" is evidence of acts by the defendant "either in preparation for the several takings or as [an] integral part of the first taking," which acts "facilitate the subsequent takings or in some way aid the defendant in accomplishing them." *Id*. In *Billingslea*, this test was satisfied by evidence the defendant took a second job requiring him to work hours in conflict with his government job, thereby setting up his illicit receipt of government payments for time actually spent at the second job. *Id*. at 520. In *Smith*, this test was satisfied by the defendant's failure to report his mother's death, thereby setting up his ongoing, improper

---

[1] According to the government, the defendant set up phony doctor appointments and falsified his mileage on his travel reimbursement forms, both on these non-existent appointments and on his actual appointments. He also falsified his medical record forms and set up a phony work record. (Doc. 14 at 3).

receipt of her checks into his checking account. 373 F.3d at 564. Here, however, the government has identified no similar evidence of an act at the outset of the defendant's criminal conduct that facilitated his subsequent receipts of government funds.

Finally, the government purports to rely on a Ninth Circuit opinion, but it has cited only a district court opinion that does not remotely support its position. (Doc. 14 at 2).

Because it is unnecessary to the disposition of the instant motion, the Court declines to resolve whether receipt under the second paragraph of Section 641 is always, or in this case, a continuing offense under *Toussie*. The Court does note, however, that the parties' spare treatment of this apparently complex issue has not greatly assisted the Court in its consideration.

For the reasons set forth above, the defendant's motion to dismiss is **denied**.


DONE and ORDERED this 14th day of July, 2011.


<u>s/ WILLIAM H. STEELE</u>
CHIEF UNITED STATES DISTRICT JUDGE